Good morning, Oliver. We have, we're now going to hear the case United States v. Lin. And we have counsel appearing from Saipan. Mr. Hanson, can you hear me? I'm sorry, you're Mr. Hanson. I'm sorry, Mr. Guerrero, can you hear me? Yes, your honor. This is Stephen Leon Guerrero, and I'm here in Guam, your honor. Okay. I just want to make sure. Are you able to see the bench? Are you able to see counsel? Yes, I'm able to. Thank you. Thank you. Okay. So I have my cast of characters backwards here. So, Mr. Hanson, you will start. Yes, your honor. Thank you. Okay. Mr. Guerrero, you may proceed, if you wish, while counsel, while Mr. Hanson argues. Go ahead, Mr. Hanson. Thank you, your honor. May it please the court. Again, my name is Mark Hanson. I'm court-appointed counsel for defendant appellant Wei Lin. And Judge Fischer, I was not the trial attorney in this case. Unlike yesterday's case, I inherited this. With regard to counts one and two, the issue is not waived. As a matter of law, a CMI driver's license is not an other document prescribed by statute or regulation for entry into or evidence of authorized stay or employment in the United States. It's simply not. Illegally obtaining a CMI driver's license is not a federal crime. It is not a violation of 18 U.S.A. 1546A paragraph one. That's really, I believe, the end of that argument. I don't know. Can I ask you this? Is it possible to conceive of the argument you're making now just as a straight sufficiency of the evidence argument that you would, we would review just under Rule 29 like any other sufficiency argument? I think, I don't think the standard's any different. I think that it can be challenged, can challenge the indictment. It could be a sufficiency of the evidence argument. I have concerns over how the court views sufficiency of the evidence argument. Well, so my, the reason I ask that is that I thought that trial counsel at the Rule 29 stage actually raised this argument as one of the grounds for why a judgment of acquittal should be granted on the 1546 charges. It was argued. It wasn't argued well. It was sort of convoluted and mixed in the argument of what really the import of the I-9, the Form I-9 was into the whole case, which is really irrelevant, and never raised, sort of argued in the abstract that a CMI driver's license is not an immigration document. More precisely, a CMI driver's license is not an other document, as that term has been defined by the courts and by the statute itself, but how it's been interpreted by the courts. I'm not aware of any other court that's actually held that a state driver's license is an other document under this statute. I mean, I just, as a waiver issue, it just seems to me that if you're right on that, as a legal matter, that this particular document doesn't count, then we'd have to look to see what other evidence the government introduced to support that charge, and I take it the response is there was none, right? There was none, Your Honor. They tried to sort of conflate the idea of an I-9 and what an I-9 requires. An I-9 is an employment verification form. It's not filed with the U.S. government. It's prescribed by statute of regulation for employers under, I think it's 8 U.S.C. 1324A, to verify that somebody has been authorized to work, but that's the second step process. And then, as I pointed out in the briefing, making a false statement in an I-9 is a violation of 1546B, but that wasn't charged. In fact, the evidence in trial was that he had never completed an I-9. That wasn't at issue. This was sort of, based on the investigation, the background of the investigation was sort of just, this was a preliminary, I think it was sort of an afterthought when they started prosecuting this, is how can we fit this CMI driver's license with these two illegally obtained licenses, which would be and are CMI crimes, but how can we fit this under 1546A1? And it just doesn't. There's other documents. If you want to broaden out. Well, the government's view was, and I guess the district court's view was, that since this is one of the things that can be used to verify the legal status for purposes of employment, it becomes adopted as another document that the statute specifies. I believe, Chief Judge, you're talking about documents that are allowable by regulation to show employment verification, not authorization, but verification under an I-9 process. And it's very clear, the regulations are very clear, and the form itself is very clear, that a driver's license, a state-issued driver's license, is evidence of identity only, not of work authorization. Now, there's an unreported case by... But they're not that easily separable. You have work authorization, and you have to figure out work authorization for whom. You have to tie that work authorization to the person. So what you have is this intermediate document that shows a picture and it shows identity. So, you know, the things are not entirely... Identity is part of work authorization. There's not a thing as work authorization abstract. There's work authorization for a particular person to work. Indeed, Your Honor, there is, but I don't see how... I think that that would broaden the statute way too far. I think that... I bet you Mr. Guerrero doesn't think it's way too far. I think he would say it's just far enough. I'm sure any federal prosecutor would love to be able to have that authority to go in and turn almost any state-issued identification card into something that they could prosecute under 1546A1 if they couldn't find some other charge to charge this person with. And that's basically... And the reason we should say they can't is... Nobody else has. It just doesn't fit in the statute. That's not going to deter the Ninth Circuit. In fact, Your Honor, the Ninth Circuit has, in an unpublished decision, ruled close to this with regard to Social Security cards, which don't have any identification... Unpublished doesn't help you any. I'm sorry, Your Honor? Unpublished doesn't help you any. It's not subject to a bank. There are all sorts of stuff that doesn't happen with unpublished. So I think that's not a particularly good argument. I was more used to... So why not? You're writing on a blank slate. This is clearly... A thousand or more times a day, people prove up their ability to work in this country by providing two pieces of identification, the work authorization plus another thing. So it's not a hypothetical question. It's not one of those things that never happens. It happens all the time. Why can't the federal government say, Well, look, since these things are used in tandem and this is necessary, this is for purposes of verifying work status, we're going to prosecute people who hold these things that, even though they're not issued by the federal government, they're so routinely used by the federal government that we're going to prosecute them. What's wrong with that? 56A1 is focused on the document itself. The process that Your Honor is describing is part of 1546B. And if there's fraud in that process, then you can be prosecuted under that. This is not the case that we have here. We're talking about a specific document. And there's no federal statute or regulation that authorizes the state or the Commonwealth of Northern Mariana Islands to issue a document that authorizes entry and stay into the United States or employment authorization. Would it be different if it happened in Guam? No. If this were a Guam driver's license? I don't believe it would be different in any state. Well, Guam is not a state. Guam is a territory, and all documents issued there, driver's licenses presumably included, are issued by the federal government. I don't believe that's the case, Your Honor. I don't know. Maybe not. I'm not familiar with Guam law, but I believe under the Organic Act of 1950, the territorial government issues, they have full authority to do that. It's not federally controlled. But the territorial government is not independent like states or the Commonwealth. It's a creature of Congress, right? I have to apologize. Yeah. I can't. Yeah, I guess it's so far afield. What about the Ryan Webster case from the Fourth Circuit? That seemed to me to go a long way toward the rationale that the Chief Judge was just debating with you about. You said earlier that no court has ever done what the government is asking to be done here, and I guess I read that the Ryan Webster case is going quite a ways down that road. I apologize, Your Honor. I believe I addressed all the cases in the. . . It's the case where they said, look, a visa application. Yes. Okay. That's a visa application, and what they were talking about was a cursory job. Something that is like the driver's, right? Well, but that was towards an end to the issuance of a U.S. visa, something that would eventually authorize entry and stay. And they said, and there's been some dispute about that. One judge says a credit card application is not a credit card. And in that Ryan Webster case, it was an application to get a visa to stay. A C&MI driver's license is the end. That's it. And there's no further process that will allow work authorization. Verification of work authorization is different than work authorization. The C&MI driver's license in no way authorizes work, and in no way authorizes stay in the United States. And that's the express language of the statute. No court has ever found that other documents is a state-issued driver's license or a territorial or a common law. Common law gets very sensitive when you try to call it a territory. But it's just simply not. And I'd like to move on to the third count because I don't want to miss my opportunity. That is a sufficiency of the evidence argument, but I believe if the court looks, and this is also the motion for the court to take judicial notice, I think at trial and now on appeal, there are made-up facts in the brief that certain things happened. And what I'd like to call the magically-appearing wallet somehow was on the person of the defendant when he was being questioned by the ICE agent. Simply not in the record. And if the court looks at the bottom of the excerpt of record 160 through about 162, you can see the entire discussion between the testimony of the ICE agent, starting basically at line 23 of ER 160. Why would it have been unreasonable, though, for a jury to infer that he probably did have the wallet on him when he just stopped? Because there was no evidence of that. There was no testimony of that. The ICE agent could have very well said. Okay, well, as I understand it, had he been driving and he got out of his car and he was walking? No, Your Honor, he was walking. And in the abstract, you're absolutely correct. Again, I wasn't trial counsel. If you just look at the record, the record is he's basically set up. They know he's walking down the road. He's stopped by the ICE agent. He's asked for identification. He denies having anything on him twice. The ICE agent says, what's that in your pocket? He pulls out photocopies. So this is all I have. And then he gets in the car. They finish the conversation in the car, not at the rack at the ICE office. And then the testimony is then we took him to the ICE office. Didn't counsel tell the jury? Counsel for the defendant that he had the license on when he was questioned? I believe there's one part of the record where counsel states that incorrectly. It's not that that's, again, that's not testimony. That's not evidence. I'm here to ask the court to look at the record. And there's nothing in the record that says he had it on him. It's just an inference. I mean, what's unreasonable about that inference? What is unreasonable about that is because factually that's not what happened. Well, wait, wait. Even if we took judicial notice of that document, it just shows that they made a stop at the house or at his apartment, right? About a 30, 45-minute stop. But that doesn't mean he didn't have it on him. But that would be an explanation. I guess the problem that I have, and it goes to the fourth argument, the prosecutorial misconduct part of it, is that through the whole trial, this whole concept was interjected that you have to believe that he had it on him at the time. It could have gotten ICE agents to say where that magically appearing wallet came from, but they never got any testimony to that. So if you just look at the record de novo and you say where did the wallet come from, there is no – it just magically appeared. And the government took a chance that – But they were making up facts at that point. No, no, no. I'm just saying it's an inference that the government was obviously depending upon the jury to draw, and the government took the chance that the jury might reject it, right? And that's a chance the government takes all the time on evidentiary matters like this. I don't think they stated it as he could have. I mean, they basically, from the opening argument through the closing argument, and now even exacerbated directly to the rack in the appellate documents. There's no facts in the record for that. And I think it was prosecutorial misconduct the entire way through that trial to state something that they – Did the government claim that they didn't make a stop? Did they argue that to the jury? Never came out of trial. It's not in the record. Remember, again, I was not the trial counsel. It's not in the record. The ICE agent did not testify. Did you hear my question? Did the government claim that they ever made a stop? It's not in the record. What do you mean it's not in the record? I mean, it's not in the transcripts. It wasn't said anything to the jury. The government did not argue to the jury they didn't make a stop. They went straight to the patient. That's what they argued, and that's the problem, because that's not in the record either. I'm sorry. You just said two different things. You said it's not in the record, and then I say, yes, they did argue. Do you understand my question? I'm not asking what facts are in the record. I'm asking what counsel argued to the jury, okay? So we're saying it's not in the record. I guess you're saying it's not in the transcript. But I'm not asking about facts. I'm asking what did the government argue to the jury. Are we on the same page now? Yes, Your Honor. Okay. The government argued to the jury there was no stop. The government did not mention whether there was or was not a stop. So they didn't misrepresent it. There's nothing the government said that's inconsistent with what we now seem to know is that there was a stop. Even if we take judicial notice on this document, so they didn't make an argument that's contrary to facts as we know them? They did not make an argument that is contrary to the facts. They did make up facts to the jury in closing argument, in opening argument and closing argument. What were those facts? That he had the wallet on him, and they weren't making an inference. They were stating it as a fact, that it was on his person at the time. There is absolutely no evidence of that. And they stated it over again. They stated it in the Rule 29 motion. He had the wallet on his person at the time he was being questioned. And that's the only thing. That's the singular fact that makes this a lie. But we all know that lawyers are not witnesses. So when a lawyer says that, he is saying this is what the record reflects. And why isn't that a fair inference that they can say, look, if you view the verdict in the light most favorable to the government, one of the things that the jury could have inferred was that he must have had it on him. He had it on him. I don't see how that's any, there's anything wrong with that. I mean, I see a big problem with it from a prosecutorial ethics standpoint, where they had this report. They had listed it as an exhibit to use to refresh the recollection of the agent that was going to testify. I don't understand. How does the exhibit contradict what the, he says he had it on him, which we have to sort of agree to saying, look, you can infer he had it on him. And what is it about the stop that contradicts that? Your Honor, that's correct. I think that was more, I only did that to counter what was stated. I ask you a question. So there's nothing? I think it offers a plaudible explanation for where the wallet came from. I think that, I mean, now I'm just arguing like I would be arguing to a jury. It sounds to me like you're making an ineffective assistance of counsel argument, that you're saying the lawyer should have had this exhibit admitted, and then gotten up and say, hey, look, you shouldn't draw this inference. Your counsel says he must have had it on him. But look, they made a stop. They made a stop. They were there for 45 minutes. Ladies and gentlemen of the jury, you should not believe that, because they could have picked it up then, and there's a reasonable doubt, and if the facts don't fit, you must acquit or something like that, whatever the lawyers say, right? Something like that. All right. Go ahead. Anyway, what we have from the government. Thank you, Your Honor. Thank you. Mr. Guerrero, were you able to hear all that? Yes. Yes, I was able to, Your Honor. May it please the court. Okay. May it please the court. My name is Steven Leong Guerrero, and I represent the United States of America in this case. I am an assistant U.S. attorney in the districts of Guam and the Northern Mariana Islands, and I would like to address, again, the arguments that were raised from Attorney Hanson. First and foremost, Your Honor. Counsel, were you trial counsel? No. No. No, I was not the assistant U.S. attorney that handled the case and the lawyer. Well, that's fine. No, it was fine. What I would like to direct Your Honor's attention is to the I-9 CNMI form itself. Why? And if I could direct Your Honor's attention. Counsel, let's start with the statute. Yes. He's been indicted under a statute. Yes. Okay, and the statute says that if I can get my paper back. Bear with me. I've got it here in paper form. Okay, the statute says this is what he was indicted under. It says whoever knowingly possesses, etc., or other document, so it's possession of a document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, and so on. So would you agree that it's talking about a document which has to be authorized by statute or regulation to be evidence of authorized stay or employment? I would agree with that, Your Honor. All right, then. Now I want to take you, I want to frame my question so you can answer it however you want. But under HCFR 274A2, there are regulations which actually make the distinctions that the statute is talking about. And it says the following documents, so long as they appear to relate to the individual presenting the document, are acceptable to evidence of both identity and employment authorization. I'm going to talk about passport and so on. And then B says the following documents are acceptable to establish identity only, and that would be a driver's license. And then there are some that are acceptable to establish employment authorization only, and that would be a Social Security card as an example, but they're all specified. Now, in this case, we're dealing with a driver's license, which is good for identity only. So it doesn't establish that he has authorized stay or employment in the United States, does it? It did not, Your Honor. Okay. And I do acknowledge the fact that a CNMI driver's license in and of itself doesn't authorize a stay or an employment in the United States. So I acknowledge that. However, the form I-9, the specific CNMI employment eligibility verification form itself, it doesn't necessarily. He didn't possess the form in his possession, did he? No, and the trial record did indicate that. This statute, counsel, talks about possessing a specific document. So I don't know how a document he didn't possess has anything to do with the statute. Well, this document, Your Honor, there is a presumption of regularity in that the form is regulated on some authority, and there is authority on this particular I-9 specific CNMI form, and the authority that allowed for the collection of this information in this form is 8 U.S.C. Section 1324-8. And that information was brought out during the closing argument from the trial counsel, but this is a document that the jury had in their possession when they went to deliberate. And this document speaks for it. The form speaks for itself in that there was a statute that authorized the collection of this information. That's not what the statute says, counsel. It does not. You haven't pointed me, or you're not making your argument tied to the statute. That's the indictment. There may be other bases for getting him, but the indictment charged him with possessing a forged document that in and of itself was evidence of an authorized stay or employment. And it isn't by definition of the regulations. It's only identification. So, yes, if you're talking about using an I.D. in combination with something else, that's a process, but it doesn't itself evidence anything other than identification. And that's not what the statute requires. Yes. But, Your Honor, with respect to, and I need to make sure I try to make this clear. With respect to the I-9 CMI form, the form, again, allows for a document like a driver's license to establish one's identity, and you couple that with one of the documents that's indicated in the C, and the combination of those two documents allows for an employer to verify one's ability to be able to legally work in the CMI. Yeah, but the regulations, counsel, you know, I understand your argument, but when the regulations themselves make a distinction between the exact words used in the 1546, which are evidence of authorized stay or employment, there are such documents that do that, stand-alone documents, and that they may both establish identity and, or they may establish employment authorization, or they may only establish identity, and it does not say anything in the statute about that category of documents. Yes, Your Honor, and I agree. However, I would like to direct, because this kind of touches on the issue that Your Honor just raised, and specifically with respect to the Ninth Circuit jury instruction, 8.133, the fraud jury instruction. As Your Honors pointed out earlier, the United States v. Ryan Webster case was talked about, and even in the comments section of the Ninth Circuit jury instruction, it references that case, and it says, the statute reaches documents that may be insufficient in and of themselves to authorize entry into the United States when they are plainly prescribed by law as a prerequisite thereof. So, you know, this is analogous to the case at hand. A driver's license, as we acknowledge, in and of itself doesn't authorize someone to stay or be employed in the United States, or in the CNMI specifically, because that's what the case is at hand. However, it is a prerequisite, it is one kind of document that when you couple it with another document that's indicated in List C on this I-9 regulatory process that is also enforced with 8 U.S.C. Section 1324A, again, that's a prerequisite. Let me ask you this. Does Congress have authority to make it a federal crime to possess a false state ID? I'm not talking about to use a false ID in obtaining a federal benefit, if it's tied to the process of obtaining a federal benefit, but let's say Congress decides we're going to just make possession of a false driver's license. You know, maybe not just driver's license, but let's just use driver's license as the proxy here. Anybody who anywhere in the United States possesses a false or forged state driver's license can make it a federal crime. Is there any problem there with the sweep of congressional authority? Any federal state, any federalism issues there? I mean, that's what you're really arguing here, because this is not somebody who was trying to get federal benefits. I understand if you're trying to get federal benefits and use the forged document issued by anybody, that's fine, but he wasn't trying to get any federal benefits. This is simply sitting around holding a piece of ID that's issued by a state authority, in this case the Commonwealth, but the same reasoning would apply to states. Isn't there a problem of congressional authority for that, to have Congress? And aren't we sort of required to read it more narrowly just to avoid that kind of conflict, a sort of federalism kind of conflict? I mean, my answer to that, Your Honor, is that this state or territory issue driver's license is being used in some respect with any document that deals, that's federally related. But it's not. This is not. You're not arguing this, because this wouldn't happen. This would mean every kid in Wyoming or California or Massachusetts who walks in, who is, you know, 18 years old and uses a forged state license to buy a bottle of beer or a six-pack of beer would be committing a federal crime. All over the country. Is that, I mean, under your construction, that would be the case. Every kid who uses a forged ID to get a pack of cigarettes, possibly a borrowed ID, possibly if you borrow somebody else's friend's ID and try to pass it off as yourself, that would be a federal crime under your construction. Let's sharpen the hypothetical. The 14-year-old or the 16-year-old who, instead of using the forged ID, has faked his date of birth so he can get employment, because that is talked about. He's allowed, he's using it to lie about his age so he can be employed, contrary to a law which says you have to be 18 to work at that. And you know what? It may be possible that in a specific hypothetical like that, again, if it's dealing with an I-9 form that is applicable to the state, and that driver's license in some shape or form is being utilized. I haven't understood Judge Fischer to say that's a state law that says you've got to be 18 to work, and so the child, the minor, lies about his age, gets an ID that shows him to be old enough to work, and so frustrates state law in that way, tries to frustrate state law. That would become a federal crime. All those things become federal crimes. Every time somebody tries to use a forged or false or possibly a borrowed ID or an ID that's obtained under not completely truthful circumstances, all those things become federal crimes. Isn't that an incredible sweep of federal authority, and shouldn't we resist that on just principles of federalism? Unless Congress, I mean, maybe Congress is very clear, you know, this is a big problem, and we want to federalize this. But we shouldn't be doing it here, should we? It's a great hypothetical you're raising, Your Honor. However, two things that I would like to point out. First, I guess it would just depend on the context that the driver's license is used by the 14-year-old. I don't think it would at all because your guy, your defendant, wasn't trying to use a driver's license for anything. He was, in fact, trying to not approve it. Well, Your Honor, if I may, Your Honor, if Your Honor looked to excerpts of Record 163, there was testimony on examination from Special Agent Israel Harahat, and when he was asked, when Wade Lynn was asked why did he seek to obtain a driver's license, he indicated that his intent was so that he can drive and work in Saipan or in Saipan. So that right there for this specific individual already showed his intent, that his purpose of getting that driver's license was so that he can work. But his charge was trying to obtain work using forged documents. His charge was just having it, was just having it. The fact that he had his purpose for getting it. Let me ask you a question about the, because we're running very short on time. There's a second count, there's the false 1001 count. Yes, Your Honor. So he's asked, do you have ID? He says no. So let's assume he's got that in his pocket. What if he said yes? Could you also charge him for false statements? Or the theory that something that you buy on the black market isn't really ID? I mean, that's not really a driver's license. It's a forged document. Let's say he says, yes, I do. Would that also be a false statement? No. I'm sorry, go ahead. I think it's, yes, because the question that was posed to the individual at the time was, do you have any identification documents present? Now, again, it's something that he had in his possession. Let's say he has, let's say he says, yes, I do. And he then hands over that document. Could you have prosecuted him under 1001 because it's really not an identification document? It's a forgery. I'd say we wouldn't prosecute him because it's... No, no, no, the question is not whether you would. The question is whether you could. I mean, this question, do you have identification, it doesn't... So you treat a false identification as an identification document? So if he'd handed over and tried to pass himself off as that and he's actually using the identification, you wouldn't find that to be a crime? Well, there would be a crime of him fraudulently possessing and using the state-of-the-art driver's license. So that would be... So why isn't his taking the position? No, I don't. Because the thing I have is a forgery. If I use it, I'm going to get into trouble. I'm going to get prosecuted. So I don't have it. I'm not going to hand it over because it's not an identification document. It's a fake. Why is it... In a situation like that, Your Honor, what our office could have charged, well, if he had that fraudulently and he possessed that fraudulently obtained license, there are separate charges that could have been brought against him. But the fact that if he's asked the general question, do you have any identification documents, and he was to provide, even though it's a fraudulent identification, it has his name, it has his personal information, but if he provides that to the agent upon the agent's request and the question itself is vague, do you have any identification documents, I mean, I would submit that there was no false statement in that respect because when he was asked an identification document, it was provided. So your position on behalf of the Attorney General is that a fake identification document, something that you make in your photo shop, something that you buy on a street corner is an identification document. So when you are asked whether you have an identification document, you have this thing that's totally fabricated that you yourself have made, that becomes an identification document, and you have to tell the truth that you have it, that that is an identification document. That's the government's position. It seems a little strange to me. Yeah. It's just the context, Your Honor, that the question, identification documents, and when he's asked that, and he provides, even though it's a fraudulently obtained license, if he's asked a general question, do you have any identification documents, and he gives it, and it shows his identification, even though it's fraudulently, he doesn't necessarily lie. No, I don't. I have a fake, but I'm not going to show that. I don't have an identification document, and I'm not dumb enough to show a cop a fake. You know, let's say he's on his way to a Halloween party, and he's got sort of, you know, he wants to sort of pass himself off as a cop, so he's dressed as a cop, and he has a cop's badge and all those things, you know, but they're all fake, right? And they ask him, you know, do you have a badge? And he says no, and he pulls it out, and there is a, you know, the gag badge. Is that then become a badge, an identification document? It just seems that it gets government into all sorts of trouble here. Yeah. It's just the context. Whether this person, I mean, I guess I need to make myself clear in that, you know, the person possessing a fraudulent license is not just going to be allowed to walk free. There will be other charges that are pertinent. You may have other charges. You may have other charges. You may have other charges, but it seems strange to me, and maybe that's, you know, that's the government's position, that you treat, you think that when somebody has a fake, something that's nothing at all, something that's made up, that they must truthfully, the truthful answer there is, yes, I have an identification document. Anyway. You're putting the guy who gets stopped in a position of having to commit a crime by the act of producing the ID, right? Because if he produces it, you say he's going to get prosecuted. So why doesn't that run into self-incrimination? Well, Your Honor brings up a very good point. But, again, the specific question with respect to how he dealt with Wayman was, he was asked that question and, you know, he denied having an identification document, not once but twice, even though we're alleging it was in his possession. And, again, that false statement in and of itself, you know, showed that he made that false statement under 1001. What if he had a document that showed he was the king of Prussia? It looked like a real ID from Prussia or wherever, you know, from Germany or wherever, and it says, this guy's the king of Prussia. Is that an emperor, you know, of an empire that doesn't even exist anymore? Is that an identification document? Well, I'm just asking. What if he had something that said that he is Vladimir Putin? It showed a nice little picture, and there it is. He is Vladimir Putin. It's put out, apparently, by the Moscow authorities. Is that an identification document? Anyway, I think we're out of time. Why don't you ponder these questions as you make our opinion, and you will find out. I guarantee you we'll find out the answer. And, Your Honor, if I can just make one just brief point. Very brief. At no point in time did Wayland's two trial counsel ever contest that that license did not belong to him, nor did they contest that it wasn't found on his person. Well, that's a good point, but when it comes to sufficient evidence, that transcends everything. We cannot, obviously, affirm a conviction for which there is no evidence. It doesn't matter whether it was raised below or not. Anyway, we are out of time. Thank you for your time, Your Honors. Okay, I believe you're out of time, and I think we've heard that we'll leave you here. Thank you. The case is signed. We'll see you in a minute. Thank you, Counsel. Thank you, Your Honors. Adjourned.
judges: Kozinski, Fisher, Watford